**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JENNIFER BISHOP and JODY BISHOP,** Individually and as next friends of A.B., a minor, | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| | § | **CIVIL ACTION NO:  4:24-cv-268** |
| **SZ DJI TECHNOLOGY CO., LTD. a/k/a SHENZHEN DJI SCIENCES AND TECHNOLOGIES LTD., SHENZHEN DJI BAIWANG TECHNOLOGY CO. LTD., and DJI TECHNOLOGY, INC.,** | § § § § § § | **JURY REQUESTED** |
| **Defendants.** | § | |

**<u>PLAINTIFFS' ORIGINAL COMPLAINT</u>**

Plaintiffs Jennifer Bishop and Jody Bishop, individually and as next friends of A.B., a minor, (collectively, the "Plaintiffs") file this Original Complaint against Defendants SZ DJI Technology Co., Ltd. (a/k/a Shenzhen DJI Sciences and Technologies Ltd.), Shenzen DJI Baiwang Technology Co. Ltd., and DJI Technology, Inc. (collectively, "DJI" or "Defendants") in connection with injuries A.B. sustained while operating a DJI Mavic Air 2 drone that was designed, manufactured, marketed, and sold by Defendants (the "Incident"). Plaintiffs respectfully show the Court as follows:

## I.    <u>PARTIES</u>

1.    Plaintiff Jennifer Bishop is an individual who is a citizen of the State of Texas and the mother of A.B., a minor. Plaintiff Jennifer Bishop is a resident of Denton County, Texas.

2.    Plaintiff Jody Bishop is an individual who is a citizen of the State of Texas and the father of A.B., a minor. Plaintiff Jody Bishop is a resident of Denton County, Texas.

1

3.      Defendant SZ DJI Technology Co., Ltd. a/k/a Shenzhen DJI Sciences and Technologies Ltd. ("DJI SZ") is a foreign company doing business in the state of Texas and organized and existing under the laws of the People's Republic of China. On information and belief, DJI SZ's principal place of business is 14th Floor, West Wing, Skyworth Semiconductor Design Building, No. 18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China, 518957. DJI SZ conducts business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States. Although DJI SZ is engaged in business in Texas, it has not designated an agent for service of process in Texas. DJI SZ has sufficient contacts with Texas and engages in business in Texas such that, under the Texas Long-Arm Statute, it may be served by serving the Texas Secretary of State as its agent, who is directed to forward duplicate copies of the summons and this complaint by international registered mail to the home office of DJI SZ at 14th Floor, West Wing, Skyworth Semiconductor Design Building, No. 18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China, 518957, as permitted under Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S No. 6638. In accordance with Fed. R. Civ. P. 4(h)(2), and pursuant to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, DJI SZ may also be served by forwarding duplicate copies of the summons and this complaint along with a translated copy of each, and requisite Hague Request and Summary documents, to the China Central Authority, International Legal Cooperation Center (ILCC), Ministry of Justice of China, 33, Pinganli Xidajie, Xicheng District, Beijing 100035, People's Republic of China. In the alternative, or in conjunction with service under the Texas Long Arm Statute and the Hague Convention, DJI SZ may be served by serving the

2

summons and this complaint along with a translated copy of each, to DJI SZ's affiliated entity DJI Technology, Inc., through its registered agent, C T Corporation System, 330 North Brand Boulevard, Suite 700, Glendale, California 91203.

4.     Defendant Shenzen DJI Baiwang Technology Co. Ltd. ("DJI Shenzen") is a foreign company doing business in the state of Texas and organized and existing under the laws of the People's Republic of China. On information and belief, DJI Shenzen's principal place of business is 14th Floor, West Wing, Skyworth Semiconductor Design Building, No. 18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China, 518957. DJI Shenzen conducts business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States. Although DJI Shenzen is engaged in business in Texas, it has not designated an agent for service of process in Texas. DJI Shenzen has sufficient contacts with Texas and engages in business in Texas such that, under the Texas Long-Arm Statute, it may be served by serving the Texas Secretary of State as its agent, who is directed to forward duplicate copies of the summons and this complaint by international registered mail to the home office of DJI Shenzen at 14th Floor, West Wing, Skyworth Semiconductor Design Building, No. 18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China, as permitted under Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S No. 6638. In accordance with Fed. R. Civ. P. 4(h)(2), and pursuant to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, DJI Shenzen may also be served by forwarding duplicate copies of the summons and this complaint along with a translated copy of each, and requisite Hague Request and Summary documents, to the China Central Authority, International Legal Cooperation

Center (ILCC), Ministry of Justice of China, 33, Pinganli Xidajie, Xicheng District, Beijing 100035, People's Republic of China. In the alternative, or in conjunction with service under the Texas Long Arm Statute and the Hague Convention, DJI Shenzen may be served by serving the summons and this complaint along with a translated copy of each, to DJI Shenzen's affiliated entity DJI Technology, Inc., through its registered agent, C T Corporation System, 330 North Brand Boulevard, Suite 700, Glendale, California 91203.

5.      Defendant DJI Technology, Inc. ("DJI Technology") is a California corporation with its principal place of business located at 201 S. Victory Blvd., Burbank, California 91502. DJI Technology is a citizen of California. DJI Technology may be served through its registered agent, C T Corporation System, 330 North Brand Boulevard, Suite 700, Glendale, California 91203.

## II.    JURISDICTION & VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000, exclusive of interest and costs, Plaintiffs and Defendant DJI Technology are citizens of different states, and both DJI SZ and DJI Shenzen are citizens or subjects of a foreign state. Plaintiffs are citizens of Texas, DJI Technology is a citizen of California, and both DJI SZ and DJI Shenzen are citizens or subjects of the People's Republic of China. Plaintiffs seek monetary relief over $1,000,000.

7.      As discussed in more detail below, this Court has personal jurisdiction over Defendants because (1) they transact business within the State of Texas, (2) they have continuous and systematic contacts with the State of Texas, (3) they purposefully avail themselves of the privileges and benefits of conducting business in the State of Texas, (4) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Texas and involved Defendants, (5)

Defendants knowingly introduce into the stream of commerce products and/or components of products into the State of Texas, and (6) the exercise of jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

8.    Venue is proper in the Eastern District of Texas, Sherman Division, pursuant to 28 U.S.C. § 1391(b)(2), since that is the judicial district where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred. Venue is also proper for both DJI SZ and DJI Shenzen in the Eastern District of Texas, Sherman Division, pursuant to 28 U.S.C. § 1391(c)(3), which provides a defendant not residing in the United States may be sued in any judicial district.

### III.    FACTUAL BACKGROUND

**A.    The Defendants**

9.    Defendants design, manufacture, repair, advertise, market, distribute, sell, and place into the stream of commerce DJI-branded products, including DJI-branded unmanned aerial vehicle ("UAV" or "drone") products like the subject Mavic Air 2 drone in this case through an established distribution channel with the knowledge and expectation that such products would be sold in this District. On information and belief, all Defendants act in concert as a single entity to develop, design, manufacture, distribute, import, and sell DJI-branded products, including the subject Mavic Air 2 drone in this case. As a result, each of Defendants has derived substantial revenues from this District. As of March 2020, Defendants accounted for approximately 70% of the world's consumer drone market.

10.    Defendants maintain a website at www.dji.com ("DJI's Website"). DJI's Website includes the following privacy policy language:

> Thank you for your interest in SZ DJI Technology Co., Ltd. and its affiliated companies ("DJI", "we", or "us") and in the various hardware, firmware, software, websites, applications, and services provided by us and on which a link to this Privacy Policy (this "Policy") is displayed (each, a "Product" or "Service"

and, collectively, the "DJI Products and Services").[1]

11.    Defendants have partnered with hundreds of retail stores located in the state of Texas, including but not limited to, Wal-Mart, Apple Store, Best Buy, and Sam's Club. DJI's Website contains a map showing where certified sellers of DJI drones can be found in the state of Texas.[2] Below is a snapshot of the website that identifies various retail stores in the Eastern District of Texas which Defendants have partnered with:



12.    The "Where to Buy" page on DJI's Website (https://www.dji.com/where-to-buy/retail-stores) identifies other places to buy DJI-branded products: (a) three "official" online

---

[1] *DJI Privacy Policy*, DJI WEBSITE (last updated July 1, 2023), https://www.dji.com/policy?from=store_footer.
[2] *See Where to Buy*, DJI WEBSITE at https://www.dji.com/where-to-buy/retail-stores (last visited Mar. 13, 2024).

stores: the DJI Official Online Store, Amazon DJI Official Store, and eBay DJI Official Store;[3] (b) five-hundred eighty different retail stores located in the State of Texas;[4] (c) ten different online retailers, including Best Buy, Walmart, and Sam's Club;[5] (d) over one hundred DJI enterprise dealers in the United States, including one DJI enterprise dealer in the state of Texas;[6] (e) fifteen DJI agricultural drone dealers;[7] and (e) twenty-five different pro dealers.[8]

13.    DJI's Website includes the following statements in the "About DJI" portion of the website:

> Headquartered in Shenzhen, widely considered China's Silicon Valley, DJI benefits from direct access to the suppliers, raw materials, and young, creative talent pool necessary for sustained success. Drawing on these resources, we have grown from a single small office in 2006 to a global workforce. Our offices can now be found in the United States, Germany, the Netherlands, Japan, South Korea, Beijing, Shanghai, and Hong Kong. As a privately owned and operated company, DJI focuses on our own vision, supporting creative, commercial, and nonprofit applications of our technology. Today, DJI products are redefining industries. Professionals in filmmaking, agriculture, conservation, search and rescue, energy infrastructure, and more trust DJI to bring new perspectives to their work and help them accomplish feats safer, faster, and with greater efficiency than ever before.[9]

14.    DJI's Website also contains specific email addresses for North America citizens and entities to contact DJI regarding dealer inquiries (https://prm.dji.com/apply/step1), media inquiries (pr.us@dji.com), enterprise (enterprise@dji.com), support (hyperlink to

---

[3] *Where to Buy: Official Online Stores*, DJI WEBSITE, https://www.dji.com/where-to-buy/online-stores (last visited Mar. 13, 2024).
[4] *Where to Buy: Retail Stores*, DJI WEBSITE, https://www.dji.com/where-to-buy/retail-stores (search by region and select "Texas" as option for "State") (last visited Mar. 13, 2024).
[5] *Where to Buy: Online Retailers*, DJI WEBSITE, https://www.dji.com/where-to-buy/online-retails (last visited Mar. 13, 2024).
[6] *Where to Buy: Enterprise Dealers*, DJI WEBSITE, https://www.dji.com/where-to-buy/enterprise-dealers (last visited Mar. 13, 2024).
[7] *Where to Buy: Agricultural Drone Dealers*, DJI WEBSITE, https://www.dji.com/where-to-buy/agriculture-dealers (last visited Mar. 13, 2024).
[8] *Where to Buy: Pro Dealers*, DJI WEBSITE, https://www.dji.com/where-to-buy/professional-dealers (last visited Mar. 13, 2024).
[9] *About DJI*, DJI WEBSITE, https://www.dji.com/company?site=brandsite&from=footer (last visited Mar. 13, 2024).

https://www.dji.com/support), and marketing (us.marketing@dji.com).[10] DJI's Website also lists its North America address as "L.A., California, USA" and office hours as "Monday to Friday, 09:00 to 17:00 (PST).[11]

15.    The DJI's Online Official Store website, store.dji.com ("DJI Online Store"), also states that customers may contact DJI's customer support through live chat, email, phone, Facebook, Twitter, YouTube, and the DJI Forum.[12]

**B.    DJI's Mavic Air 2 Drone.**

16.    DJI offers numerous series of quadcopter camera drones, including the Mavic Air series. In or around April 2020, DJI released its Mavic Air 2 drones, the second member of the Air series following the original Mavic Air released in 2018.

17.    The DJI Mavic Air 2 drones are advertised as having numerous safety features, including the "Return to Home" feature ("Return to Home" or "RTH" function). DJI's Website describes the Return to Home function as "a very useful safety feature that helps bring your drone back to a safe, accessible landing location."[13] Before the drone takes off, the drone sets its takeoff position as the "Home Point." Using either the phone app or the controller, the drone user can initiate "Smart RTH," the Return to Home feature where the drone will land itself at the takeoff position. When the Smart RTH feature is initiated, a "Precision Landing" feature is also supposed to activate.

---

[10] *Contact DJI*, DJI WEBSITE, https://www.dji.com/contact (last visited Mar. 13, 2024).
[11] *Id.*
[12] *7 Ways to Contact DJI Customer Support*, DJI OFF. ONLINE STORE, https://store.dji.com/guides/7-ways-to-contact-dji-customer-support/ (last visited Mar. 13, 2024).
[13] DJI Support, *Return to Home (RTH): Must-Have Drone Feature*, DJI OFF. ONLINE STORE (May 31, 2019) [available at: https://web.archive.org/web/20201112034535/https://store.dji.com/guides/return-to-home-rth-must-have-drone-feature/].

18.     DJI also advertises that its Mavic Air 2 has an optical avoidance system called the "Advance Pilot Assistance System (APAS) 3.0" (the "optical avoidance" feature).[14] DJI's Website describes this obstacle avoidance feature as a "system [that] generates a real-time map of its surroundings, producing an exceptionally safe flight performance."[15]

**C.     Plaintiffs purchased a Mavic Air 2 Fly More Combo Package from Best Buy's online store in July 2020.**

19.     DJI offered two purchasing options for its Mavic Air 2 drones: (1) a base option, which includes the drone and its basic components, or (2) the Fly More Combo, which "comes with essential accessories."[16]

20.     On or around July 22, 2020, Plaintiffs purchased a DJI Mavic Air 2 Fly More Combo package from Best Buy's online store for $1,112.79 (the "Mavic Air 2 Fly More Combo"). The MAVIC AIR 2 Fly More Combo package included the following items:

- 1 Mavic Air 2 Aircraft (the "Initial DJI Drone")
- 1 Remote Controller
- 3 Intelligent Flight Batteries
- 1 AC Power Cable
- 1 RC Cable (USB Type-C Connector)
- 1 RC Cable (Standard Micro-USB Connector)
- 1 Type-C Cable
- 1 ND Filters Set (ND16/64/256)
- 1 Remote Controller
- 1 Battery Charger
- 6 Low-Noise Propellers (Pair)
- 1 RC Cable (Lighting Connector)
- 1 Gimbal Protector
- 1 Pair of Spare Control Sticks
- 1 Battery Charging Hub

---

[14] *Support for Mavic Air 2*, DJI WEBSITE, https://www.dji.com/support/product/mavic-air-2 (last accessed Mar. 13, 2024) (scroll to "Specs," click "Expand," and scroll to "Safety – Obstacle Avoidance System").

[15] DJI Support, *Return to Home (RTH): Must-Have Drone Feature*, DJI OFF. ONLINE STORE (May 31, 2019) [available at: https://store.dji.bg/en/blog/mavic-air-2-faq-everything-you-need-to-know].

[16] DJI, *Mavic Air 2 Fly More Combo: Is It Worth It?*, DJI OFF. ONLINE STORE (July 16, 2020) [available at: https://web.archive.org/web/20200812124534/https://store.dji.com/guides/mavic-air-2-fly-more-combo-worth-it/].

Photos of the items included in the Mavic Air 2 Fly More Combo are depicted below:



The Mavic Air 2 Fly More Combo did not include any safety covers for the propeller blades on the Initial DJI Drone.

21.    In the spring and summer of 2020, prior to purchasing the Mavic Air 2 Fly More Combo, Plaintiffs watched numerous online videos regarding drones, including the DJI Mavic Air 2 aircraft. These videos included videos created and/or disseminated by Defendants. Some of the videos created and/or disseminated by Defendants (along with some of Defendants' other marketing and advertising materials) showed families flying drones together with young children. None of the videos or materials that Plaintiffs reviewed prior to purchasing the Mavic Air 2 Fly More Combo referenced safety covers for the propeller blades on the DJI Mavic Air 2 aircraft. Plaintiffs later learned—after the Incident—that Defendants recommend safety covers for the propeller blades for the DJI Mavic Air 2 aircraft. On information and belief, Defendants separately sold packages of safety covers for the propeller blades for the DJI Mavic Air 2 aircraft for less than $20.00.

22.    On or around July 23, 2020, the Mavic Air 2 Fly More Combo arrived at the Plaintiffs' home in Lewisville, Texas. After Plaintiffs received the Mavic Air 2 Fly More Combo, Jody Bishop operated the Initial DJI Drone several times before allowing A.B. to operate the drone. A.B. only operated the Initial DJI Drone while under close supervision by one or both of his parents. A.B. also obtained a Small UAS Certificate of Registration through the Federal Aviation Administration on July 23, 2020.

**D.    The Initial DJI Drone was damaged in July 2020 and sent to Defendants' facility in Los Angeles, California for repair.**

23.    Within a week of receiving the Mavic Air 2 Fly More Combo, the Initial DJI Drone was damaged—despite the anti-crash and obstacle avoidance feature—after the drone hit a tree limb during flight. The camera mount on the Initial DJI Drone was damaged from hitting the tree limb.

24.    On or about July 24, 2020, A.B. went to the DJI Website and submitted a warranty repair claim regarding the damage to the Initial DJI Drone and requested a repair be made under Defendants' warranty for the drone.

25.    On July 24, 2020, Plaintiffs shipped the Initial DJI Drone to Defendants' store in Los Angeles, California for repair.

26.    On July 30, 2020, Defendants sent an email from notification@dji.com to A.B. acknowledging receipt of the Initial DJI Drone. The July 30, 2020 email stated:

**Repair Received Notice**

Dear Customer,

The item you sent to DJI for repair has been received and your case number is

**CAS-4687142-G7M1H1**

Please visit our <u>Repair Progress Inquiry</u>[17] website or use the DJI GO App to view the repair progress in one business day.

**Product Details**

**Mavic Air 2 Aircraft & Gimbal Camera**

Quantity: 1

Serial Number: 3N3BH6M002050Y

**This is an automated message. Any replies to this message will not be monitored.**

If you have any questions, please feel free to contact DJI North America Technical Support, Mon-Fri 9:00AM ~ 5:00PM (PST) via the following three channels:

Tel: +1 (818) 235 0789
Online Support: <u>Online Support</u>[18]

Thank you for choosing DJI

Best Regards,
DJI Support

27.    On August 3, 2020, Defendants sent another email from <u>notification@dji.com</u> to A.B. attaching an $86.00 quote detailing the cost to repair the Initial DJI Drone (the "Invoice").

The August 3, 2020 email included the following language:

**Invoice**

Dear Customer,

This message is from DJI Support. A quote detailing the cost to repair your product Mavic Air 2 is attached to this email. Click <u>Repair Progress Inquiry</u>[19] for the detailed damage information.

**Case Info.**

---

[17] This link sends you to https://repair.dji.com/en/support/RepairTrace.
[18] This link sends you to https://www.dji.com/support/product.
[19] This link sends you to https://repair.dji.com/en/support/RepairTrace.

Customer

**[A.B.]**

Case No.

**CAS-4687142-G7M1H1**

Quotation Date

**2020-Aug-03**

Remark

"Dear customer, We regret that the service is not covered by warranty based on the results of damage assessment, please find details for labor and parts listed. We will either repair it or replace it with a product that's new or equivalent to new in both performance and reliability after payment has been received. For more information, please visit (http://www.dji.com/service/policy)"

Plaintiffs paid the Invoice to repair the Initial DJI Drone.

28.     On August 4, 2020, Defendants' representative "Ken (DJI Support)" sent an email from support.us@dji.com to A.B. regarding the data analysis of the Initial DJI Drone. Defendants' representative Ken concluded the incident was due to a hardware limitation regarding tree branches, rather than due to any product malfunction. The August 4, 2020 email included the following language:

Dear [A.B.],

Thank you for your patience.

This is Ken from the Technical Support team, and I will be assisting you in this case from now on for related inquiries about data analysis.

Here's the result of the data analysis on your case number: **CAS-4687142-G7M1H1**.

Incident date: 2020 07 24 FLY: 19
1. The aircraft worked under GPS mode, and responded to the pilot's command well;
2. At flight time T=727 seconds, relative height H=6 meters, distance to home D=48 meters, the aircraft flew up and to the right as per RC input and crashed with obstacles;
3. Incident coordinates: 33.042546, -96.888019

4. There are trees at the incident location, due a hardware limitation the unit cannot detect tree branches.

According to the analysis, the incident was not caused by any product malfunction.

Your understanding and cooperation will be highly appreciated.

Thank you for choosing DJI.
Best regards,

Ken
DJI Customer Support
Website: http://www.dji.com/support
Youtube: http://s.dji.com/DJI-Tutorials

**E.    Defendants shipped a new Mavic Air 2 drone to Plaintiffs in August 2020.**

29.     In August 2020, DJI shipped a new Mavic Air 2 drone to Plaintiffs (the "Subject DJI Drone") at their residence in Lewisville, Texas.

30.     On August 8, 2020, the Subject DJI Drone arrived at Plaintiffs' residence in Lewisville, Texas.

**F.    A.B. is injured by the Subject DJI Drone on August 14, 2020.**

31.     On August 14, 2020, A.B. and his mom were in the front yard of their home in Lewisville, Texas, taking turns flying the Subject DJI Drone down their street and taking pictures with it.

32.     Mrs. Bishop and A.B. decided to land the Subject DJI Drone using its Smart Return to Home function which, as explained above, was designed, manufactured, and marketed by Defendants as a feature that is supposed to automatically return (and land) the drone to the same location where it took off.

33.     The Subject DJI Drone's takeoff location prior to the Incident was the Plaintiffs' front yard—approximately halfway up the walkway leading to the front porch of Plaintiffs' house (the "Take Off Location"). Both A.B. and his mom were more than ten (10) feet from the

Take Off Location while operating the Subject DJI Drone. A.B. was standing on the front porch of Plaintiffs' house while he operated the Subject DJI Drone and initiated the "return to home" feature during the subject flight. At the time, Mrs. Bishop was standing in the yard a safe distance away from the Take Off Location.

34.    As the Subject DJI Drone was returning to the Take Off Location based on the "return to home" function, it briefly hovered above Take Off Location before suddenly and unexpectedly flying away from the Take Off Location. The Subject DJI Drone then bounced off the side of the house and flew into A.B.'s face. The propeller blades on the Subject DJI Drone sliced through the middle of A.B.'s right eye—almost cutting his eye in half and destroying his lens, cornea, iris, and pupil and damaging his retina. A.B. also suffered lacerations to his face and shoulder from the drone's propeller blades. Mr. Bishop—who was inside the house when the Incident occurred—immediately came to the entry way of the house where he met A.B. and Mrs. Bishop and saw A.B.'s injuries. Mr. and Mrs. Bishop immediately drove A.B. to the emergency room.

35.    As a result of the violent collision with the Subject DJI Drone, A.B. was seriously and permanently injured. To date, A.B. has had seven surgeries on his right eye:

    a.  August 15, 2020 surgery at Children's Health Dallas for emergency surgery to close "open globe" secondary to corneoscleral laceration of the right eye;

    b.  September 9, 2020 surgery at Ophthalmology Surgery Center of Dallas to determine extent of retinal damage after placement of a cornea;

    c.  November 6, 2020 surgery at Ophthalmology Surgery Center of Dallas for vitrectomy with membrane peel, endolaser, and gas;

    d.  December 11, 2020 surgery at Ophthalmology Surgery Center of Dallas for

vitrectomy with membrane peel, endolaser, and gas;

e.  February 24, 2021 surgery at Ophthalmology Surgery Center of Dallas for vitrectomy with membrane peel, endolaser, scleral buckle, and silicon oil;

f.  June 9, 2021 surgery at Ophthalmology Surgery Center of Dallas for retina check/repair and cornea transplant; and

g.  February 16, 2022 surgery at Glaucoma Associates of Texas to insert shunts in his eye.

36.     Despite these surgeries, A.B. remains legally blind in his right eye. A.B.'s vision in his right eye is worse than 20/200 and cannot be corrected with corrective lenses. A.B.'s damaged right eye has no lens (as it was destroyed in the Incident), and an external contact lens is not an effective correction because it causes double vision and the shunts were inserted in his eye. A.B.'s damaged right eye also has no functioning pupil, resulting in light sensitivity. The injury and resulting corrective surgeries have left A.B.'s right eye disfigured, including the shape and color of the pupil and iris and drooping/weak eyelid. A.B. must take steroid drops in his right eye multiple times a day. He will have to continue this treatment for the rest of his life. A.B. will also need further cornea transplants throughout his life, as transplanted corneas have only a limited useful lifespan and must be periodically replaced.

37.     A.B. and his parents have also experienced significant emotional distress as a result of the Incident and his injuries. The loss of vision, accompanied by migraines, nerve damage, muscle spasms, restless sleeping, fatigue, and anxiety have dramatically affected their lives. A.B. is extremely light sensitive and regularly suffers from migraines. He can no longer perform daily activities that he used to enjoy, including playing basketball and other sports. He must wear ballistic-grade eye protection when doing any physical activity. His activities have

16

been restricted in a way that has caused him to feel alone and depressed. A.B. was a very social person before the Incident but has become insecure and withdrawn from his friends over the last several years. He worries that he will never completely recover from the Incident and feels fragile, depressed, and frustrated by the changes in his functioning.

### IV.   CONDITIONS PRECEDENT

38.   All conditions precedent to the filing of this suit have been performed or have occurred.

### V.   CAUSES OF ACTION AGAINST DEFENDANTS

**COUNT ONE: NEGLIGENCE**

39.   Plaintiffs re-allege and incorporate the facts and allegations set forth above as if they were fully set forth herein.

40.   Defendants were engaged in the business of designing, engineering, developing, testing, approving, manufacturing, fabricating, assembling, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, wholesaling, selling, supplying and placing into the stream of commerce drones, including the Subject DJI Drone.

41.   At all material times, Defendants had a duty to exercise reasonable care in the designing, engineering, developing, testing, approving, manufacturing, fabricating, assembling, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, wholesaling, selling, supplying and placing of the Subject DJI Drone into the stream of commerce, including a duty to assure that the Subject DJI Drone would not cause operators to suffer injuries.

42.   Defendants failed to exercise reasonable care and were negligent in the designing, engineering, developing, testing, approving, manufacturing, fabricating, assembling, equipping,

17

inspecting, repairing, labeling, advertising, promoting, marketing, distributing, wholesaling, selling, supplying and placing of the Subject DJI Drone into the stream of commerce.

43.    The negligence of Defendants, their agents, apparent agents, servants and employees, included but was not limited to the following acts and/or omissions:

a.    failing to act as a reasonable prudent designer, manufacturer, or distributor of the Subject DJI Drone;

b.    failing to act as a reasonable prudent designer, manufacturer, or distributor as to the "return to home" feature on the Subject DJI Drone;

c.    failing to act as a reasonable prudent designer, manufacturer, or distributor as to the "obstacle avoidance" feature on the Subject DJI Drone;

d.    failing to adequately warn and/or instruct Plaintiffs of the unreasonably dangerous risks associated with the Subject DJI Drone;

e.    failing to adequately warn and/or instruct Plaintiffs as to the "return to home" feature on the Subject DJI Drone;

f.    failing to adequately warn and/or instruct Plaintiffs as to the "obstacle avoidance" feature on the Subject DJI Drone;

g.    failing to adequately warn and/or instruct Plaintiffs regarding the availability and recommendation of safety covers for the propeller blades for the Subject DJI Drone;

h.    failing to adequately warn and/or instruct Plaintiffs regarding the need to wear protective eyewear while operating the Subject DJI Drone;

i.    failing to provide proper and safe equipment to safely operate the Subject DJI Drone;

18

j.   failing to include safety covers for the propeller blades in the Mavic Air 2 Fly More Combo;

k.   failing to provide a safe recreational drone; and

l.   failing to properly test the Subject DJI Drone and to take appropriate safety actions to protect users.

44.   Each of these actions and omissions, singularly or in combination with others, constitutes negligence, which was a proximate cause of the occurrence, made the basis of this action, A.B.'s injuries, and Plaintiffs' damages. Additionally, Defendants are vicariously liable for the conduct of their employees, agents and/or representatives committed in the course and scope of their employment, agency and/or representation.

45.   Defendants knew or should have known that operators, such as A.B., would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendants' failure to exercise ordinary care, as set forth above. Defendants' negligence was the producing cause and/or proximate cause of Plaintiffs' injuries and harm.

**COUNT TWO: STRICT LIABILITY – MARKETING DEFECT**

46.   Plaintiffs re-allege and incorporate the facts and allegations set forth above as if they were fully set forth herein.

47.   Defendants are strictly liable under Section 402(A) of the Restatement (Second) of Torts, Section 1 of the Restatement (Third) of Torts – Products Liability, Chapter 82 of the Texas Civil Practice & Remedies Code, and Texas common law for injecting the defective and unreasonably dangerous Subject DJI Drone into the stream of commerce which proximately caused and/or was a producing cause of the injuries and damages suffered by Plaintiffs.

19

48.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Subject DJI Drone. The Subject DJI Drone was defective due to inadequate warnings because Defendants knew or should have known that the Subject DJI Drone did not include proper safety features and did not include proper instructions regarding the "return to home" and "obstacle avoidance" features but Defendants failed to give operators adequate warning of such risks. The Subject DJI Drone was also defective due to inadequate warnings because there were no instructions or warnings regarding the use of safety covers for the propeller blades on the drone. The Subject DJI Drone was also defective due to inadequate warnings because there were no instructions or warnings regarding the use of protective eyewear while operating the drone. Further, the Subject DJI Drone was utilized by A.B. in a manner reasonably anticipated by Defendants.

**COUNT THREE: STRICT LIABILITY – MANUFACTURING DEFECT**

49.    Plaintiffs re-allege and incorporate the facts and allegations set forth above as if they were fully set forth herein.

50.    Defendants are strictly liable under Section 402(A) of the Restatement (Second) of Torts, Section 1 of the Restatement (Third) of Torts – Products Liability, Chapter 82 of the Texas Civil Practice & Remedies Code, and Texas common law for injecting the defective and unreasonably dangerous Subject DJI Drone into the stream of commerce which proximately caused and/or was a producing cause of the injuries and damages suffered by Plaintiffs. Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Subject DJI Drone. At all times herein mentioned, the Subject DJI Drone designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was in an unsafe, defective and unreasonably dangerous condition at the time it

20

left Defendants' possession.

51.     At all times herein mentioned, the Subject DJI Drone was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants in that it deviated from product specifications in a manner that made it unreasonably dangerous. Specifically, the Subject DJI Drone's "return to home" and "obstacle avoidance" features deviated from Defendants' planned output by failing to return to the Take Off Location and instead colliding with the Plaintiffs' house before striking A.B. in the face and eye. This deviation from the planned output made the Subject DJI Drone unreasonably dangerous and posed a serious risk that it could injure its operators including, but not limited to, eye injuries.

52.     As a direct and proximate result of Defendants' placement of the defective and unreasonably dangerous Subject DJI Drone into the stream or commerce, Plaintiffs have suffered and will continue to suffer damages.

## COUNT FOUR: STRICT LIABILITY – DESIGN DEFECT

53.     Plaintiffs re-allege and incorporate the facts and allegations set forth above as if they were fully set forth herein.

54.     Defendants are strictly liable under Section 402(A) of the Restatement (Second) of Torts, Section 1 of the Restatement (Third) of Torts – Products Liability, Chapter 82 of the Texas Civil Practice & Remedies Code, and Texas common law for injecting the defective and unreasonably dangerous Subject DJI Drone into the stream of commerce which proximately caused and/or was a producing cause of the injuries and damages suffered by Plaintiffs.

21

55.     At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Subject DJI Drone which injured A.B.

56.     The Subject DJI Drone was unsafe, defective and in an unreasonably dangerous condition at the time it left Defendants' possession. It was expected to and did reach the usual consumers, handlers without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

57.     At all times herein mentioned, the Subject DJI Drone failed to perform as safely as an ordinary operator would expect when used in an intended or reasonably foreseeable manner. Plaintiffs' injuries resulted from use of the Subject DJI Drone that was both intended and reasonably foreseeable by Defendants. At all times herein mentioned, the Subject DJI Drone posed a risk of danger inherent in its design which outweighed the benefits of that design.

58.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiffs, in particular, and Defendants are therefore strictly liable for the injuries sustained by Plaintiffs. The defective designs of the Subject DJI Drone include, but are not limited to, the "return to home" and "obstacle avoidance" features on the drone, and the failure to include safety covers for the propeller blades with the Mavic Air 2 Fly More Combo.

59.     At all times herein mentioned, there was a safer alternative design that was both technologically and economically feasible which would have eliminated or substantially reduced the damage to Plaintiffs. As a direct and proximate result of Defendants' placement of the

22

defective Subject DJI Drone into the stream of commerce, Plaintiffs experienced and will experience severe harm.

**COUNT FIVE: GROSS NEGLIGENCE**

60.    Plaintiffs re-allege and incorporate the facts and allegations set forth above as if they were fully set forth herein.

61.    In addition to being negligent and acting with conscious indifference and reckless disregard for the safety of others, the acts and omissions detailed above also constitute gross negligence by Defendants. When viewed objectively from the standpoint of Defendants at the time of their occurrence, those actions and omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others. Further, Defendants had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others, including A.B.

**COUNT SIX: AGENCY AND RESPONDEAT SUPERIOR**

62.    Plaintiffs re-allege and incorporate the facts and allegations set forth above as if they were fully set forth herein.

63.    At all times relevant to this case, Defendants were acting through their employees, agents, apparent agents, servants and/or principals. These employees, agents, apparent agents, servants and/or principals were acting within the course and scope of their authority on behalf of Defendants before and at the time of the Incident. Accordingly, Defendants are vicariously liable for the negligent conduct of their employees, agents, apparent agents, servants and/or principals at the time of the Incident under the legal doctrine of respondeat superior.

**COUNT SEVEN:    BYSTANDER CLAIM**

64.    Plaintiffs re-allege and incorporate the facts and allegations set forth above as if

23

they were fully set forth herein.

65.     Plaintiffs Jennifer Bishop and Jody Bishop were located near the scene of the Incident when the Incident occurred. Plaintiffs Jennifer Bishop and Jody Bishop have sustained emotional distress and mental anguish from their sensory and contemporaneous perception of the Incident. Plaintiffs Jennifer Bishop and Jody Bishop and their son A.B. are closely related.

## VI.     DAMAGES

66.     Plaintiffs re-allege and incorporate the facts and allegations set forth above as if they were fully set forth herein.

67.     The acts and/or omissions of Defendants proximately caused Plaintiffs' injuries for which Defendants are liable. As a result, Plaintiffs are entitled to recover damages against Defendants for A.B.'s past and future physical pain and suffering, mental anguish, disfigurement, physical impairment, medical expenses, and loss of earning capacity. Plaintiffs Jennifer Bishop and Jody Bishop are further entitled to recover damages against Defendants for their mental anguish in the past and future. The total sum of damages sought is greater than the minimum jurisdictional limits of this Court.

68.     A.B. was thirteen (13) years of age at the time of the incident in question. His date of birth is May 6, 2007. He was in good health at the time of the incident. At this time, A.B. has a reasonable life expectancy of seventy-nine (79) years, according to the applicable United States Life Tables. He was to earn annual revenues and reasonably expected increases in earnings until retirement.

69.     Plaintiffs also seek recovery of exemplary/punitive damages in an amount the jury deems to be fair and reasonable.

70.     Plaintiffs also seek recovery for all costs of court, and pre-judgment and post-

judgment interest in the maximum amounts allowed by law.

## VII.    JURY DEMAND

71.    Plaintiffs hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VIII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Jennifer Bishop and Jody Bishop, individually and as next friends of A.B., a minor, respectfully pray that upon final trial by jury that Plaintiffs recover a judgment against Defendants SZ DJI Technology Co., Ltd. a/k/a Shenzhen DJI Sciences and Technologies Ltd., Shenzen DJI Baiwang Technology Co. Ltd, and DJI Technology, Inc. that includes the following:

a.    An amount sufficient to fully compensate Plaintiffs for their damages and in an amount that exceeds the minimal jurisdictional limits of this Court for A.B.'s:

    i.    Physical pain and suffering in the past and future;

    ii.    Mental anguish in the past and future;

    iii.    Disfigurement in the past and future;

    iv.    Physical impairment in the past and future;

    v.    Medical expenses in the past and future; and

    vi.    Loss of earning capacity in the future.

b.    An amount sufficient to fully compensate Jennifer Bishop and Jody Bishop for their damages and in amounts that exceed the minimal jurisdictional limits of this Court for their mental anguish in the past and future;

c.    Exemplary damages;

d.    Pre-judgment interest as provided by law;

e. Post-judgment interest as provided by law;

f. Cost of suit; and

g. All such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Dated: March 27, 2024                    Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

By: */s/ Robert L. Sayles*
  **ROBERT L. SAYLES**
  *Attorney-in-Charge*
  Texas Bar No. 24049857
  Email: rsayles@bradley.com
  **BOYCE HOLLEMAN**
  Texas Bar No. 24126727
  Email: bholleman@bradley.com

  1445 Ross Avenue, Suite 3600
  Dallas, Texas 75202
  Telephone: (214) 257-9800
  Facsimile: (214) 939-8787

and

**SAYLES LAW FIRM**

  **RICHARD A. SAYLES**
  State Bar No. 17697500
  Email: dsayles@sayleslawfirm.com

  5600 W. Lovers Lane, Suite 116-363
  Dallas, Texas 75209
  Telephone: (214) 643-8030

**ATTORNEYS FOR PLAINTIFFS**