UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JENNIFER BISHOP, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-268-SDJ |
| | § | |
| SZ DJI TECHNOLOGY CO., LTD. | § | |
| ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

SZ DJI Technology Co., Ltd. ("SZ DJI") and Shenzen Baiwang Technology Co.
Ltd. ("DJI Baiwang") (collectively, the "DJI Defendants") are Chinese companies that
design and manufacture drones. Some of these drones are ultimately sold to end
consumers in Texas. One of the DJI Defendants' drones malfunctioned and seriously
injured A.B., the young son of Jennifer Bishop and Jody Bishop. The Bishops sued
individually and as next friends of A.B., asserting various product liability and
negligence causes of action against the DJI Defendants.

Before the Court is the DJI Defendants' Motion to Dismiss for Lack of Personal
Jurisdiction and Brief in Support.[1] (Dkt. #11). After full consideration, the motion
will be denied. The DJI Defendants placed their drones in the stream of commerce
when it was reasonably foreseeable that those products would be purchased and used
in Texas. One of those products injured the Bishops. This is sufficient to establish
specific jurisdiction because, under the applicable "stream of commerce" test for
personal jurisdiction, the DJI Defendants purposely availed themselves of the Texas

---

[1] There is a third defendant in this case, DJI Technology, Inc. ("DJI Technology"). DJI
Technology is a California corporation and does not join the motion to dismiss for lack of
personal jurisdiction.

1

market for drones, the Bishops' injuries relate to that purposeful availment, and the DJI Defendants have failed to present a compelling reason for the Court to conclude that the assertion of jurisdiction would be unfair or unreasonable.

## I. BACKGROUND

Defendants SZ DJI and DJI Baiwang produce consumer-operated quadcopter camera drones. SZ DJI, a Chinese corporation, designs the drones. DJI Baiwang, also a Chinese corporation, manufactures the drones. The entire design and manufacturing process takes place in China.

The Bishops purchased a DJI drone for A.B.—the Mavic Air 2 model—through Best Buy's website and had it shipped to their home in Lewisville, Texas (the "Initial Drone"). Shortly after purchasing the drone, it was damaged when it hit a tree branch. As a result, A.B. submitted a warranty repair claim on DJI's website (www.dji.com). When the warranty claim was rejected, the Bishops paid for the drone to be repaired. Although they had sent the faulty drone in for repair, the Bishops later received a new drone (the "Subject Drone").

When operating the Subject Drone, it malfunctioned and flew into A.B.'s face, causing serious injuries to his eye, face, and shoulder. A.B. has had seven surgeries on his right eye since the incident and is now legally blind in that eye. This lawsuit ensued. Among other causes of action, the Bishops assert claims against the DJI Defendants for negligence and gross negligence, and for product liability grounded in alleged design, manufacturing, and marketing defects.

The DJI Defendants acknowledge that they designed and manufactured both the Initial Drone and the Subject Drone. As to the Initial Drone, after it was

2

manufactured, DJI Baiwang sent it to the DJI Defendants' mutual parent company, iFlight Technology Co., Ltd. ("iFlight") for distribution. Next, iFlight sent the Initial Drone to another DJI entity, DJI Service LLC, for further distribution. DJI Service, in turn, sold the Initial Drone to Best Buy, who sold it to the Bishops and shipped it to them in Texas. The Subject Drone's distribution path was the same as the Initial Drone, except that DJI Service sent the drone directly to the Bishops' residence rather than through Best Buy.

The DJI Defendants have a website—the same website on which A.B. submitted his warranty claim for the Initial Drone. *See* www.dji.com. The DJI website includes a "Where to Buy" tab, which informs potential customers that they can purchase the DJI Defendants' drone products at approximately 580 different brick and mortar locations in Texas, including Apple, Best Buy, Walmart, and Sam's Club stores.[2] Customers can also purchase drones directly from the DJI website, including customers located in Texas. *See* (Dkt. #14-1 at 100). The website is also actively soliciting more retailers for Dallas, Texas. *See* (Dkt. #14-1 at 98). In addition, the website features a "GEO Zone Map" where the DJI Defendants advise end-users where they can fly DJI drones and how they might be impacted by local regulations. These maps include Texas, and, for example, areas in and around Lewisville, Texas. *See* (Dkt. #14-1 at 110, 115–16).

Relevant here, the DJI website also includes promotional and related content catering to United States markets—including Texas. This inclusion either shows an

---

[2] *See Where to Buy*, DJI, https://www.dji.com/where-to-buy/retail-stores (select "Texas" from the "state" dropdown tab); (Dkt. #14-1 at 20–97).

intent to serve those markets, or at a minimum, an awareness that the DJI Defendants' drones are destined for drone markets in the United States and Texas. For example, in March 2015, "DJI's Director of Product Experience Randy Jay Braun" spoke at a drone-panel discussion hosted by South by Southwest, an annual conference held in Austin, Texas. *See* (Dkt. #14-1 at 119). As featured on the DJI website, Mr. Braun "discuss[ed] the future of drone technology and what it means for consumers," before a crowd of over 100 spectators. *Id.* Also in 2015, a customer used his DJI drone as part of a flood rescue effort in North Texas, prompting DJI to post an article on the DJI Website declaring that it "is proud to play [a] part in the rescue" and adding that "[i]t is a testament to the reliability of DJI products that they can be used in these remarkable endeavors."[3] The next year, "DJI's own Stacy Garlington, Events and Product Experience Specialist," spoke at a "TEDxYouth event held at Westlake High School performing Arts Center in Austin, Texas," where she promoted DJI's business to an audience of Texas high schoolers.[4]

The DJI Defendants' marketing efforts in Texas are also evident on social-media accounts linked to the DJI website. For example, the "[o]fficial twitter feed of DJI,"[5]—a DJI social-media account that links to the DJI Defendants' website—

---

[3] *DJI Drones Save the Day During Texas Flood Rescue*, DJI (May 26, 2015), https://www.dji.com/newsroom/news/dji-drones-save-the-day-during-texas-flood-rescue; *see also* (Dkt. #14-1 at 123–24).

[4] *Stacy Garlington Shares Her Journey Into Aerial Photography at TEDxYouth@Austin,* DJI (Mar. 21, 2016), https://www.dji.com/newsroom/news/stacy-garlington-tedx-austin (video of talk included at URL); *see also* (Dkt. #14-1 at 126).

[5] @DJIGlobal, X, https://x.com/DJIGlobal; *see also* (Dkt. #14-1 at 6).

advertised a DJI-sponsored drone promotional event in Austin, Texas, on December 1, 2018.[6] DJI also hosted a drone-industry conference called "Airworks" in Dallas, Texas, in the fall of 2018.[7]

The DJI Defendants do not dispute that their drones are sold in Texas. Yet they still maintain that they are not subject to personal jurisdiction here and have moved for dismissal on that ground. In support of their motion, the DJI Defendants point to the fact that they design and manufacture drones only in China and that third-party intermediaries effectively conduct the entire distribution process, including the process that resulted in the sale and delivery of the Initial Drone and the Subject Drone to the Bishops in Texas. The DJI Defendants also note that they have no operational presence in Texas, meaning that they have no employees or offices here. Finally, the DJI Defendants contend that whatever Texas contacts they may have are too attenuated to support the exercise of personal jurisdiction.

The Bishops disagree. In the Bishops' view, the content on the DJI Defendants' website and related social-media accounts amply demonstrate that the DJI Defendants have an expectation that the drones they design and manufacture in China will ultimately be sold to Texas consumers. For this reason, the Bishops

---

[6] @DJI Global, X (Nov. 9, 2018, 6:19 PM), https://x.com/djiglobal/status/1060960117770731520?s=42&t=PB2wR0Xol291ZdeN96Bi3A; *see also* (Dkt. #14-1 at 131).

[7] @DJIGlobal, X (Oct. 31, 2018, 11:32 PM) https://x.com/djiglobal/status/1057777298781413378?s=42&t=PB2wR0Xol291ZdeN96Bi3A; *see also* (Dkt. #14-1 at 134).

contend, the DJI Defendants could foresee that they might be sued here based on their activities.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a party to raise the defense that a court lacks personal jurisdiction. The Court's jurisdiction over a defendant is constrained by due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To pursue a lawsuit against a defendant, a plaintiff must therefore establish that the defendant maintains adequate contacts with the forum state such that haling him to the State to defend himself would neither be "[un]reasonable" nor offend "traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 141 S.Ct. 1017, 209 L.Ed. 2d 225 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[8]

Personal jurisdiction over a defendant can be established under two general theories—either general jurisdiction, which refers to the Court's "all-purpose" jurisdiction over defendants that are essentially at home in the forum state, or specific jurisdiction, which refers to "case-linked" jurisdiction arising from a defendant's activities directed toward the forum state. Only specific jurisdiction is at issue here.

---

[8] The Court's jurisdiction must also satisfy the forum state's long-arm statute. *Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). Because the Texas long-arm statute extends to the constitutional maximum, that statute does not require separate analysis here. *Id.*

"Specific jurisdiction arises when the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (citation omitted). The Court evaluates specific jurisdiction using a "three-step" procedure. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). First, the plaintiff must demonstrate that the defendant has minimum contacts with the forum state—meaning that the defendant purposely directed his activities at the forum state and availed himself of the privilege of doing business in the State. *Id.* Second, the plaintiff must demonstrate that the asserted causes of action arise out of, or relate to, the defendant's contacts with the forum state. *Id.* Third, after the plaintiff has established the first two requirements, the burden shifts to the defendant to prove that maintaining a lawsuit in the forum state would be either "unfair" or "unreasonable." *Id.*

Although the burden rests with the plaintiff to establish the core elements of personal jurisdiction, the plaintiff can satisfy that burden at the pleading stage by simply presenting a prima facie case for jurisdiction. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). "Allegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by [a] defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982)).

## III. DISCUSSION

### A. The DJI Defendants Have Purposefully Availed Themselves of the Texas Drone Market.

To establish minimum contacts, the Bishops must show that the DJI Defendants "purposefully availed [themselves] of the benefits and protections of [Texas] such that [they] should reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (cleaned up). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 193–94 (quoting *Burger King*, 471 U.S. at 475).

In products liability cases like this one, "an analysis involving a stream-of-commerce metaphor is often employed to assess whether the non-resident defendant has minimum contacts with the forum." *Zoch v. Magna Seating (Germany) GmbH*, 810 F.App'x 285, 289 (5th Cir. 2020). "That doctrine recognizes that a defendant may purposely avail itself of the protection of a state's laws—and thereby will subject itself to personal jurisdiction 'by sending its goods rather than its agents' into the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011)). The "stream of commerce" jurisdictional concept was first articulated by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In that case, the Court stated as follows:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the *stream of commerce* with the expectation that they will be purchased by consumers in the forum State.

*Id.* (emphasis added). The metaphor allows for jurisdiction where "the product has traveled through an extensive chain of distribution before reaching the ultimate consumer." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (internal quotation marks and citation omitted).

Under Fifth Circuit precedent applying the stream-of-commerce theory, a plaintiff may establish a defendant's requisite minimum contacts by showing that "[the defendant] delivered the product that injured [him] 'into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *In re DePuy Orthopaedics*, 888 F.3d at 779 (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)). Put differently, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (alteration in original) (quoting *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir.1993)). The Bishops argue that the DJI Defendants purposefully availed themselves of the Texas drone market and thereby established minimum contacts with Texas under the stream-of-commerce theory. The Court agrees.

9

The DJI Defendants' website,[9] which advertises their drone products for purchase at nearly 600 retail locations in Texas, demonstrates that the DJI Defendants were aware, or at least had a reasonable expectation, that their products would be sold or used in Texas. The DJI Defendants cannot, on one hand, announce to the public through their website that their drones can be purchased at hundreds of Texas retail locations, while on the other hand attempt to credibly claim that they did not "reasonably expect[] that [their drone] product[s] would be sold or used in Texas." *Zoch*, 810 F.App'x at 291. The DJI Defendants' position is even more far-fetched given their repeated, in-person marketing efforts in Texas, and the fact that their website and related social-media accounts also regularly promote the use of their drones in Texas. *See supra* Part I.

The DJI Defendants argue the stream-of-commerce test is not satisfied because only "third-party entities"[10] distributed the drones within the United States, and the

---

[9] The DJI Defendants concede that SZ DJI maintains this website but note that the website makes no mention of DJI Baiwang. (Dkt. #18 at 2 n.1). The Bishops' complaint, however, alleges that both SZ DJI and DJI Baiwang maintain the website. The DJI Defendants have offered no evidence to rebut that allegation. Because the Court must accept the Bishops' uncontroverted allegation as true at this stage of litigation, the Court treats the website as attributable to both SZ DJI and DJI Baiwang. *See Int'l Truck & Engine Corp.*, 259 F.Supp.2d at 556–57 (citing *Wyatt*, 686 F.2d at 282 n.13) (explaining that when evaluating whether a plaintiff has established a prima facie case for personal jurisdiction, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by [a] defendant's affidavits").

[10] The DJI Defendants assert that iFlight and DJI Service sold and distributed the drones within the United States. (Dkt. #11 at 2–3.) The DJI Defendants refer to iFlight and DJI Service as a "third parties." (Dkt. #11 at 9). However, iFlight is the parent company of SZ DJI and DJI Baiwang, (Dkt. #12 ¶ 1; Dkt. #13 ¶ 1), and DJI Service is a part of the same corporate family as SZ DJI and DJI Baiwang, (Dkt.#14-26 at 1); (Dkt.#14-27 at 1). The Court need not resolve whether iFlight and DJI Service are true third-party entities at this time: Even if they were, this Court would still have personal jurisdiction over Defendants.

10

DJI Defendants themselves took no "affirmative action toward Texas." (Dkt #11 at 10). But in the Fifth Circuit, no affirmative action is required to meet the stream-of-commerce test; rather, the plaintiff need only show mere foreseeability or awareness. *Ainsworth*, 716 F.3d at 177–78 (noting that the Fifth Circuit's stream-of-commerce test does "not require that the defendant target the forum"); *Luv N' Care*, 438 F.3d at 470 (explaining that the Fifth Circuit has "declined to follow the suggestion . . . that some additional action on the part of the defendant, beyond foreseeability, is necessary" to satisfy the stream-of-commerce test).

And although the DJI Defendants used third parties to distribute their products within the United States, that fact does not control the foreseeability analysis. *Luv N' Care*, 438 F.3d 465 at 471 ("[J]urisdiction may attach both to manufacturers who supply their own delivery systems and to those that make use of the distribution systems of third parties."); *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *8 (E.D. Tex. July 6, 2021) ("It is analytically irrelevant" to the stream-of-commerce analysis "that [a Defendant] first sells [its products] to its American distribution network, which is then followed by the downstream entities . . . selling those [products] to domestic consumers."). Indeed, it strains credulity for the DJI Defendants to operate a website touting the availability of their drone products at hundreds of retail locations in Texas and yet claim that

11

they could not expect or foresee that such products might be sold or used in Texas. That dog won't hunt.

The Bishops have made a prima facie case that the DJI Defendants delivered their products into the stream of commerce with the reasonable expectation that a substantial number of those products would be sold to Texas consumers. Under Fifth Circuit precedent, that satisfies the purposeful-availment requirement under the stream-of-commerce theory.[11]

## B. The Bishops' Claims Relate to the DJI Defendants' Contacts with Texas.

The Court looks next to whether the Bishops' causes of action arise out of or relate to the DJI Defendants' contacts with Texas. A court may exercise specific jurisdiction over a nonresident defendant only when a "sufficient nexus" exists "between the [defendant]'s contacts with the forum and the cause of action." *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 103 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). At this juncture, the "central concern" of specific jurisdiction is "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

---

[11] Plaintiffs also argue that Defendants have purposefully availed themselves of Texas law under the *Zippo* sliding-scale test by maintaining a website that allows customers to purchase and ship products directly to Texas. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (adopting the reasoning of *Zippo Mfg. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)). But the Court need not address that argument because the Court's conclusion that Defendants purposefully availed themselves of Texas law under the stream-of-commerce test is sufficient to hold that this Court has personal jurisdiction over them.

As explained herein, the DJI Defendants have purposefully availed themselves of the Texas drone market by putting their drone products into the stream of commerce with the reasonable expectation that such products would be sold in Texas. A.B.'s injuries resulted from an accident involving one of the DJI Defendants' drones that was sold to Texas consumers. This is sufficient to establish that the Bishops' claims relate to the DJI Defendants' contacts with Texas.

The DJI Defendants resist this conclusion. Pointing to the fact that the Bishops did not purchase the Initial Drone or Subject Drone from any brick and mortar Texas location, the DJI Defendants maintain that the Bishops' claims therefore do not arise from or relate to the DJI Defendants' purposeful availment of the Texas drone market. This argument, which presumes a strict causal connection is needed to meet the relatedness requirement, misses the mark.

In *Ford,* the Supreme Court clarified that "a strict causal relationship between the defendant's in-state activity and the litigation" is not required to establish specific jurisdiction. *Ford*, 592 U.S. at 362. Instead, a cause of action may either "arise out of or relate to the defendant's contacts with the forum." *Id*. Thus, a cause of action may satisfy the "relate to" requirement when the defendant "serves a market for a product in the forum State and the product malfunctions there," even if the specific product that caused an injury was not sold in the forum state. *Id*. at 363. This standard is met because the DJI Defendants served the Texas drone market under the stream-of-commerce test, and A.B.'s injuries resulted from the malfunction of the DJI Defendants' drone in Texas.

13

The DJI Defendants further argue that *Ford* does not apply because their only contacts with Texas were made through third-party intermediaries. This argument also fails. *Ford* does not require that a defendant's contacts with the forum state be direct. To the contrary, *Ford* makes clear that indirect contacts may establish personal jurisdiction:

> If the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly or indirectly*, the market for its product in several or all other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 363 (cleaned up) (emphasis added) (quoting *World-Wide Volkswagen*, 444 U.S. at 297). The *Ford* Court's conclusion is consistent with the continued vitality of the stream-of-commerce theory, which frequently involves third-party distributors. *See Nouvo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 381 (5th Cir. 2002).

*    *    *    *

The Bishops have thus met the first two prerequisites for the Court to exercise specific jurisdiction over the DJI Defendants. Specifically, they have made a prima facie case that (1) the DJI Defendants have purposefully availed themselves of the Texas drone market, and (2) their claims relate to the malfunction of a DJI drone in Texas, which caused the injuries to A.B. that are the subject of this action.

## C. The Exercise of Personal Jurisdiction Is Not Unfair or Unreasonable.

Because the Bishops have made a prima facie case that the DJI Defendants have minimum contacts with Texas, the burden shifts to the DJI Defendants to show that the exercise of jurisdiction would be unreasonable. *See Luv N' Care*, 438 F.3d at

14

473. The DJI Defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477 (1985); *accord Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ("[O]nce minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant."). Cases where personal jurisdiction is unreasonable "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King,* 471 U.S. at 477).

To determine whether it is unreasonable "to require [a] corporation to defend" itself in a specific forum, courts estimate "'the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business." *Int'l Shoe*, 326 U.S. at 317 (quotation omitted). In making this assessment, courts "balance[ ]: '(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *E. Concrete Materials, Inc. v. ACE Am. Ins.*, 948 F.3d 289, 298 (5th Cir. 2020) (quoting *Luv N' Care*, 438 F.3d at 473). Additionally, when a foreign defendant is involved, "the procedural and substantive policies of other nations whose interests are affected by the assertion of

jurisdiction by the [forum state]" must be considered. *Asahi Metal Indus. v. Superior Ct.*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

The DJI Defendants dispute only two of the relevant factors: the burden on the nonresident defendant and considerations of international sovereignty. The Court takes each in turn.

The DJI Defendants argue that the burden of defending this suit in Texas would be substantial because "[n]one of the defendants are Texas companies," "the drones at issue were not designed or manufactured in Texas," "[a]ny inquiry into the manufacturing, design, testing, inspection, marketing, distribution, sale, assembly, installation, etc., of the drone would all need to occur outside of Texas," "[t]he relevant witnesses and documentary evidence as to the design and manufacture would also be located outside of Texas," and "both movants are located in China and conduct all business activities there, including all activities concerning the drones at issue." (Dkt. #11 at 12). Even assuming all of that is true, the DJI Defendants have failed to "provide evidence that [they] would be substantially burdened by having to defend this case in Texas over and above the general burdens of litigating in a foreign country." *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 120 (E.D. Tex. 2009). Additionally, "[i]t is well recognized that modern communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome." *Id.*; *see also Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co.*, No. Civ.A. 2:05-CV-185, 2005 WL 3299718, at *9 (E.D. Tex. Dec. 5, 2005) ("The same technology that facilitates [a Chinese corporation] conducting business with customers in eighty countries equally

16

facilitates its ability to defend itself from claims . . . in countries where its products arrive.").

In addition, the Court notes that in recent years the DJI Defendants have been involved in lawsuits in this District, as well as the Northern and Western Districts of Texas. In this District, the DJI Defendants were sued by Textron Innovations, Inc. for patent infringement in 2022. *See Textron Innovations Inc. v. SZ DJI Tech. Co.*, No. 2:22-CV-351 (E.D. Tex. Sep. 9, 2022). In that case, the DJI Defendants did not challenge personal jurisdiction and filed counterclaims against Textron. In 2023, Defendant SZ DJI filed a patent infringement lawsuit in the Northern District of Texas. *See SZ DJI Tech. Co., LTD v. Bell Textron Inc.*, No. 4:23-CV-1025 (N.D. Tex. Oct. 6, 2023). And in the Western District of Texas, Textron filed another lawsuit against SZ DJI in 2021, alleging that certain features in DJI drones infringed Textron's patents. *See Textron Innovations Inc. v. SZ DJI Tech. Co.*, No. 6:21-CV-740 (W.D. Tex. July 19, 2021). These recent actions, in which the DJI Defendants have both defended and asserted claims in Texas federal courts, further demonstrate that the DJI Defendants will not be unduly burdened by litigating another lawsuit in this forum.

Turning to considerations of international sovereignty, the DJI Defendants argue that "[e]xercising personal jurisdiction over SZ DJI and DJI Baiwang in Texas in the context of this case would do nothing to promote cross-borders relations or international comity." (Dkt. #11 at 12). But the DJI Defendants fail to explain how this Court's exercise of jurisdiction would harm "[t]he interests of foreign nations" or

"the Federal interest in [the] Government's foreign relations policies." *Johnston v. Multidata Sys. Int'l*, 523 F.3d 602, 615 (5th Cir. 2008) (quoting *Asahi*, 480 U.S. at 115). To the extent the DJI Defendants suggest that "international comity" dictates that Chinese companies availing themselves of Texas markets cannot be required to appear in a Texas federal court when one of their products injures a Texas citizen, the Court rejects that suggestion. Foreign companies that choose to put their products into the stream of commerce and deliberately avail themselves of American markets should expect to be held accountable in American courts when those products injure U.S. citizens. The DJI Defendants' reliance on this factor is particularly curious given their recent litigation history in Texas federal courts, which involved several cases that apparently, but inexplicably, did not invoke similar concerns about "cross-border relations." In short, the DJI Defendants have offered no legitimate reason why considerations of international sovereignty work against the exercise of personal jurisdiction.

In sum, the Court concludes that "this is not one of the rare cases where exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *ATEN*, 261 F.R.D. at 120. Because the DJI Defendants have sufficient minimum contacts with Texas, and the exercise of personal jurisdiction is not unfair or unreasonable, this Court has specific personal jurisdiction over the DJI Defendants.

18

## IV. Conclusion

It is **ORDERED** that Defendants SZ DJI Technology Co., Ltd. and Shenzen Baiwang Technology Co. Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support, (Dkt. #11), is **DENIED**.

**So ORDERED and SIGNED this 6th day of March, 2025.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE