UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JENNIFER BISHOP, ET AL. § | |
| § | |
| v. § | CIVIL NO. 4:24-CV-268-SDJ |
| § | |
| SZ DJI TECHNOLOGY CO., LTD., § | |
| ET AL. § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings and Supporting Brief. (Dkt. #29). Defendants assert that Plaintiffs agreed to an arbitration provision contained in their terms-of-use policy and that this lawsuit falls within the scope of that provision. But the person who agreed to that arbitration provision, a minor at the time, has since disaffirmed the agreement. Under the circumstances, and applying controlling Texas law on contract formation, there is no valid agreement to arbitrate and Defendants' motion must be **DENIED**.

## I. BACKGROUND

Defendants SZ DJI Technology Co., Ltd., Shenzen DJI Baiwang Technology Co. Ltd., and DJI Technology, Inc. (collectively, "DJI"), produce and distribute consumer-operated quadcopter camera drones. A DJI drone malfunctioned and seriously injured Adam Bishop, the son of Jennifer Bishop and Jody Bishop. Adam was thirteen years old at the time of the incident.[1] The Bishops sued individually

---

[1] Adam Bishop, who has been referenced in prior pleadings and court orders as "A.B., a minor" turned eighteen years old on May 6, 2025. The Bishops have affirmed that they will file a motion for leave to file an amended pleading substituting Adam Bishop as a plaintiff. (Dkt. #79 at n.1).

1

and as next friends of Adam, asserting various product liability and negligence causes of action against DJI.

The Bishops purchased a DJI drone—the Mavic Air 2 model—through a third-party online retailer and had it shipped to their home in Lewisville, Texas (the "Initial Drone"). Once the Bishops received the drone, the product's packaging prompted them to download the DJI Fly Application (the "App"). Adam downloaded the App on his cellphone. It prompted him to click "agree" in response to the App's Terms of Use, which he did.[2]

Shortly after activating the Initial Drone, it was damaged when it hit a tree branch. As a result, Adam submitted a warranty repair claim through DJI's website (www.dji.com). When the warranty claim was rejected, the Bishops paid for the drone to be repaired. Although they had sent the faulty drone in for repair, the Bishops later received a new drone (the "Subject Drone").

When operating the Subject Drone, it malfunctioned and flew into Adam's face, causing serious injuries to his eye, face, and shoulder. Adam has had seven surgeries on his right eye since the incident and is now legally blind in that eye. This lawsuit ensued. Among other causes of action, the Bishops assert claims against DJI for negligence and gross negligence, and for product liability grounded in alleged design, manufacturing, and marketing defects.

---

[2] For reference, a DJI drone will not operate until a consumer syncs their drone with the App and agrees to the terms of use. And the terms of use state that "[i]f you are not eligible or do not agree to any of the Terms, then you may not use the Product." (Dkt. #29-1 at 12).

DJI's motion to compel arbitration is premised on the arbitration provisions contained in the App's Terms of Use. Those terms include the following general arbitration provision:

> These Terms provide that all disputes between you and DJI will be resolved by BINDING ARBITRATION. YOU AGREE TO GIVE UP YOUR RIGHT TO [GO] TO COURT to assert or defend your rights under these Terms, except for matters that may be taken to small claims court. Your rights will be determined by a NEUTRAL ARBITRATOR and NOT a judge or jury, and your claims cannot be brought as a class action.

(Dkt. #29-1 at 6).

The App's Terms of Use also contain a more specific arbitration clause, which states in part:

> In the interest of resolving disputes between you and DJI in the most expedient and cost effective manner, you and DJI agree that every dispute arising in connection with these terms will be resolved by binding arbitration. . . . This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms. YOU UNDERSTAND AND AGREE THAT BY ENTERING INTO THESE TERMS, YOU AND DJI ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

(Dkt. #29-1 at 9).

DJI argues that the Court should compel arbitration because the arbitration provisions contained in the App's Terms of Use created a valid agreement to arbitrate and the Bishops' claims fall within the scope of that agreement. Alternatively, DJI argues that the arbitration provisions contained in the App's Terms of Use are enforceable under the doctrine of direct-benefits estoppel.

3

## II. LEGAL STANDARD

When considering a motion to compel arbitration, the Court must first determine whether there is a valid agreement to arbitrate. *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021). If so, the Court then evaluates whether the dispute in question falls within the scope of the arbitration agreement. *Id.* The first question is one of contract validity, to which courts apply "ordinary state-law principles that govern the formation of contracts." *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The second question of scope "is answered 'by applying the federal substantive law of arbitrability.'" *Id.* at 222–23 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The federal policy favoring arbitration applies at the second prong, but not at the first. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

## III. DISCUSSION

### A. There Is No Valid Agreement to Arbitrate.

A valid arbitration agreement is a threshold requirement to compel arbitration. *Polyflow, L.L.C.*, 993 F.3d at 302. The Bishops argue that no valid arbitration agreement exists between DJI and Jennifer and Jody Bishop because Jennifer and Jody Bishop never agreed to the App's Terms of Use. Both Jennifer and Jody Bishop testified that they have not seen, read, or agreed to the App's Terms of Use prior to filing this lawsuit. (Dkt. #35 at 5, 8). Instead, they contend that Adam is the only one who downloaded the App and agreed to its terms. (Dkt. #35 at 10); (Dkt.

4

#34 at 11). DJI offers no evidence to the contrary. Thus, the Court concludes that the only potentially valid arbitration agreement that can exist is between Adam and DJI.[3]

But no valid arbitration agreement exists between Adam and DJI because Adam agreed to the arbitration provision when he was a minor and has since disaffirmed the agreement. The parties agree that Texas law applies to the question whether there is a valid agreement to arbitrate, and under Texas law, a minor's contract is voidable during minority and for a reasonable time after the minor reaches majority. *Dairyland Cnty. Mut. Ins. Co. of Tex. v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973) ("While the contract of a minor is not void, it is voidable at the election of the minor."); *In re Mexican Rests., Inc.*, No. 11-04-00154-CV, 2004 WL 2850151, at *2 (Tex. App.—Eastland Dec. 2, 2004, no pet.) (mem. op.) ("[A] minor may, within a reasonable time after reaching his majority, set aside [his] contracts"); 5 WILLISTON ON CONTRACTS § 9:14 & n.1 (4th ed.) (noting that Texas law follows the "general principle . . . that a minor's contract is voidable during minority and for a reasonable time after the minor reaches majority"). Accordingly, "[a] minor may set aside the entire contract at her option," including an agreement to arbitrate. *PAK Foods Hou., LLC v. Garcia*, 433 S.W.3d 171, 176–77 (Tex. App.—Houston [14th Dist.] 2014, pet.

[3] The Bishops also argue that Defendants DJI Technology and DJI Baiwang are not parties to the App's Terms of Use and thus only SZ DJI can enforce the arbitration provisions. (Dkt. #34 at 10). DJI contends that DJI Technology and DJI Baiwang are proper parties because the App's Terms of Use incorporate DJI Technology and DJI Baiwang in a "Contact Information" section. (Dkt. #49 at 5). The Court need not resolve whether DJI Technology and DJI Baiwang are proper parties to the App's Terms of Use because the arbitration agreement is invalid even if DJI Technology and DJI Baiwang are proper parties.

dism'd) (holding that no valid arbitration agreement existed between a minor and her former employer because the minor disaffirmed the agreement during her minority).

Here, Adam validly disaffirmed any previously enforceable arbitration agreement. Indeed, in a letter sent to DJI during Adam's minority, the Bishops stated that "[Adam] has disaffirmed any and all contracts he may have previously formed with [DJI]," including any "alleged agreement to arbitrate." (Dkt. #35 at 12). The Bishops again reiterated this disaffirmance in a supplemental brief submitted to the Court, approximately one month after Adam reached the age of majority. (Dkt. #77 at 1) ("Adam Bishop is no longer a minor, having turned 18 years old on May 6, 2025, and he hereby disaffirms the DJI Terms of Use and the Arbitration Terms once again.").

Under Texas law, the Bishops' statements in the letter and the supplemental brief are sufficient to disaffirm the arbitration agreement between Adam and DJI. *See PAK Foods*, 433 S.W.3d at 177 (holding that a minor validly disaffirmed a contract by stating the disaffirmance in a response to a motion to compel); *see also In re Mexican Rests., Inc.*, 2004 WL 2850151 at *2 (holding that minors validly disaffirmed an arbitration agreement with their employer by "ending their employment and filing suit" against their employer); *see also Miller v. McAden*, 253 S.W. 901, 903–04 (Tex. App.—Austin 1923, writ dism'd w.o.j.) (holding that four months was a reasonable amount of time for a former minor to disaffirm a contract after reaching the age of majority). Because Adam agreed to the arbitration agreement as a minor and has validly disaffirmed it, this Court cannot compel arbitration of his claims.

### B. The Arbitration Provisions Are Not Enforceable Under the Principle of Direct-Benefits Estoppel.

DJI argues that even if the arbitration agreement is invalid, the Bishops are still bound to arbitrate under the principle of direct-benefits estoppel. "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (alteration in original) (citation omitted). "A non-signatory can 'embrace' a contract's arbitration provision in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.* (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–20 (5th Cir. 2006)).

Under Texas law, a contract that has been invalidated by a minor's disaffirmance cannot bind non-signatories through direct-benefits estoppel because no valid agreement to arbitrate exists. *See PAK Foods*, 433 S.W.3d at 178 (holding that the mother of a minor who disaffirmed an arbitration agreement could be not compelled to arbitrate because no valid arbitration agreement existed due to the minor's disaffirmance); *see also Oak Crest Manor Nursing Home, LLC v. Barba*, No. 03-16-514-CV, 2016 WL 7046844, at *6 (Tex. App.—Austin Dec. 1, 2016, no pet.) (mem. op.) ("Because we have determined that due to . . . incapacity no contract existed between the parties, it follows that neither [the plaintiff] nor [the plaintiff's guardian] could seek to 'derive a direct benefit from' that non-existent contract."

7

(quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005))). Here, the Court has determined that Adam validly disaffirmed the arbitration agreement, rendering it invalid. Thus, none of the Bishops are bound to arbitrate under the principle of direct-benefits estoppel.

## IV. CONCLUSION

For these reasons, it is **ORDERED** Defendants' Motion to Compel Arbitration and Stay Proceedings and Supporting Brief, (Dkt. #29), is **DENIED**.

**So ORDERED and SIGNED this 30th day of September, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE